Our third and final case for the day is Pitts v. United States of America. Arguing for Mr. Pitts is Mr. Day. Good morning, Your Honors. Chief Judge Carnes, Tim Day, on behalf of the appellant Ivory Pitts. Your Honors, California Statute 261-2 defines what rape is in California, and as such it does not include the force requirement that is necessary under Johnson v. United States to find that Mr. Pitts' conviction qualified as an armed career criminal predicate. Counsel, I understand that, but just so we know where we are, this is a second or successive application proceeding in which we granted a certificate. The district court ruled it's now back before us. And under a second or successive application, the only thing we really can review is whether or not the residual clause, given the Supreme Court's new rule of constitutional law that's retroactively applicable, whether or not the residual clause resulted in the ACCA enhancement in this case. Isn't that correct? I do believe, Your Honor, that we do have to meet the Beeman standard, the Beeman analysis, and I believe we do that. The reason I'm asking that is, suppose, just suppose, the district court, we found the missing piece of paper, just a gap in the file, and we find it, and the district court said, I am going to sentence him under the ACCA because I find that the elements clause applies. And I find the element clause applies because I think forcible rape in California is, hey, forcible, and that meets the ACCA requirement. That's what California law is. All right. And then we now know that that's probably error under California law, based on later decisions. That error of interpreting and applying California law would not be cognizable or reachable in this second or successive application proceeding. Well, Your Honor, that I don't know the answer to. I will just tell you that I do believe that clearly the enhancement was imposed, not under the elements clause, but under the residual clause. I understand, and I guess I shouldn't really argue with you. Usually lawyers evade the question, but your answer is not very evasive. You just don't know. But my answer is I'm strongly inclined, and I wondered if you could point me to the error of my ways, to believe that if the second or successive application had been filed and had said, there's no residual clause involvement in this case, but the district court misapplied the elements clause because it misunderstood California law based on subsequent decisions of the California Supreme Court. We would not have been allowed to grant a second or successive application in that case, would we? That would have been outside 2244B1, wouldn't it? Your Honor, I don't know the reason that the court granted the— I'm sorry. I'm sorry. I'm asking you to step into the world of a hypothetical and say if that was done today. In another case, alternate parallel universe, identical to yours, except the district court clearly applied the elements clause, and you came in and said, okay, that may have been justifiable at the time or may be un-understandable, but we now know based on later California Supreme Court decisions that that was wrong. And for that reason, let me file a second or successive application raising the issue. There's no basis for which we would have allowed that. I'm sorry. That doesn't fit under 2244, does it? The only thing that I would say, Your Honor, is that federal habeas corpus, the great writ, I think is designed to remedy situations where individuals are being held against their will or incarcerated in violation of the Constitution. And so I do believe that if, in fact, it was known and it was demonstrated that the elements clause analysis was improper, I would believe that under the federal habeas corpus jurisprudence,  and I believe that that's part and parcel of the argument that we're making here today. So any time that there's been an error in applying state law in an ACCA analysis, that's an exception to the bar on second successive applications? Your Honor, that's a difficult question for me to answer. I can only say that I do believe that the federal habeas corpus jurisprudence would allow us to bring a constitutional error in which an individual is now being held in custody in violation or in excess of the statutory maximum. I believe we'd be able to bring that before the court if we could establish that, in fact, the district court's decision was erroneous. If, in fact, it was done in derogation of state law because, as we know, it's the state court interpretation of the statute that would control. All right. I understand your position being I'm not going to take up any more of your time that a violation of state law in a federal habeas determination is a constitutional violation. Any time you misjudge state law, I understand, I appreciate that, and we're going to give you three extra minutes because I took so much of your time. Well, I appreciate that, Your Honor, and I'm willing to, obviously, that's why I'm here to answer any of the court's questions. Continuing on specifically with the merits of 261, it's very clear that the elements in 261 are that what's required is an act of sexual intercourse, and the pertinent elements are that it is accomplished against a person's will by means of force. Counsel, sorry, this is Robert Love. Can you go back to Beaman before you get to the merits of the forcible rape statute in California? Yes. So, as I understand it, in your reply brief, you can see there's nothing on the record which indicates one way or another in which the district court rules if it relied on the residual clause or the elements clause, correct? That's correct, Your Honor. The record is silent. So, as I understand, what we're looking to is case law. And as I read Beaman, the standard seems to be that there needs to be either a holding that a violent felony is only applicable under ACCA, under the residual clause, or that there is some case law making that holding obvious. In other words, it either holds or it's otherwise obvious that a violation would qualify as a violent felony under the residual clause. Is that your understanding of Beaman as well? I think so, Your Honor, that it's the legal landscape at the time. And addressing that, I believe we have that. It's the Griffin case that I've cited in my brief. Well, so, but, I mean, Griffin is obviously an issue of state law interpreting a state statute. It certainly said nothing about whether it held that this applied under the Armed Career Criminal Act as under the residual clause or under the elements clause, correct?  How then, where there's a California or where there's a Ninth Circuit case directly on point saying one thing, and let's assume that the California Supreme Court interpreted the statute differently than that, then at best, isn't there some sort of at least messiness until the Ninth Circuit comes back and says otherwise? In other words, how can we say that there's a holding or that it's obvious, given that disparity in the law? And, again, we're just talking about the forcible rape statute right now. Right, I understand that. And here's how. The California Supreme Court in People v. Griffin made it very clear that force, at least not Johnson force, is not a part of that particular statute. That would have been known. That California Supreme Court decision would have been known to the district court, in our case, in November of 2009. So, therefore, although it would not have made the analysis to or the direct application to 924E, it would have been the case that the district court would have looked to. Now, I know you mentioned the Ninth Circuit and Potter. My view, in 1990, 14 years before the People v. Griffin, I would note that, first of all, Potter would not have had the benefit of the California Supreme Court's decision on the elements, and we do know that it's the California state's interpretation of the elements or a state court's interpretation of the elements of a particular statute that we have to look to. Yes, but it even requires a holding on whether a violation qualifies under the residual clause. I mean, I doubt any state court, and it's certainly not Griffin, having read Griffin, doesn't make any determination, as you said, under 924E. It just wouldn't make that determination. Someone else would have to come and make that conclusion, but that was not done by any federal court. At the very least, what we had was a 1990 decision saying one thing and a California case saying the elements might be something different, right? That's correct, but what I would say, and I think we see this in the Pickett case, is that the issue is the historical fact. What was the historical fact at the time of the sentencing? And Pickett tells us that that is what is in the district court's mind at the time. So at that particular time, if there's a decision, which there was, like People v. Griffin, which absolutely indicates that this would not fit under the elements clause, then he most likely, or should I say would have more likely than not, imposed the sentence under the residual clause. Okay, so let's assume I agree with you on that, and I'm not sure I do, but let's assume I agree with you. Let's then take the California robberies, because there we held in this very case on direct appeal that those applied both under the residual and the elements clause. How could we say that, at least as to the robberies, that the district court, that there was a holding in 2009 or it was otherwise obvious that it qualified as a violent felony under the residual clause, where we in that very case said the elements clause applied? Yes, Your Honor, and the Pitts' direct appeal, which the court held that, is no longer the law of the case, and that is because there's an intervening change in the law. That's People v. Anderson in 2011, where the California Supreme Court clarified that negligence is the mens rea for robberies. Counselor, excuse me, but how is that relevant if we're trying to get inside the mind of the district court back when the sentencing took place in 2009? I'm sorry, Your Honor. I was answering the question about California robbery and why that doesn't control the case, and I believe it's because there's an intervening change in the law that tells us that the direct appeal decision does not control the case. Well, I understand that, but I think this is what the chief judge was trying to say, and I'm hesitant to speak for the man, but what we're trying to do is to get into the mind of the district court judge who imposed the original sentence under Beeman. And what Beeman, if in that same case we applied the elements clause, how could the district court say that it was obvious or there was a holding that only the residual clause applied to that very thing, even though later law changed? Because of that very fact, that there's an intervening change in the law. And therefore... Doesn't Beeman tell us that doesn't matter, though, counsel? In other words, doesn't Beeman tell us that we look myopically at what the district court knew at the time, not what happened later on? That's correct. Time has expired. Even the extra three minutes, Stephanie? Yes, sir, even with the extra three. Okay, counsel, go ahead and answer Judge Lutz's questions and any additional questions that he or Judge Marcus have. Well, I thank you for that. In November of 2009, the district court would have had two cases to look to on 261, Potter in 1990, the Ninth Circuit, and Griffin, 2004, which construed the elements of the statute. No, counsel, I'm talking about the robbery now. With regard to robbery, your question is back in November? In 2009, how do we know? How is it either they're holding or was it obvious that California robbery was only a violent felony under the residual clause? I'm sorry, yes, Your Honor. Back in 2008, the Ninth Circuit ruled in U.S. v. Becerra-Lopez that California robbery could be accomplished by a threat to property, which we know from this court's decisions in both Evans and Oliver cannot qualify as a crime of violence. But we only know that now. In 2009, that wasn't obvious or a holding, was it? Yes, it was. Becerra-Lopez, 541 Federal 3rd 881 was 2008. No, no, I understand that, but there was other case law because we concluded it was under the elements clause for the California robbery that it couldn't have been obvious or a holding for the district court at that time. Because in the same appeal, we said the elements clause applies. That I understand, but if you're asking the question, back in November of 2009, what would the district court have, what would have been in his mind, it would have been Becerra-Lopez, which categorically would have indicated that California robbery could not qualify because it contained a threat against property. And we knew at that time, as we know now, that a threat against property cannot qualify as a crime of violence. That decision was in 2008 out of the Ninth Circuit, and the district court would have known that. So that's why he would not have relied upon California robbery under the elements clause. That's all I have, Chief. Thank you. Thank you, counsel. We'll give you a full five minutes, and we'll hear now from Ms. Cannon, the attorney for Appalachia. Good morning, and may it please the court. Eileen Cannon on behalf of the United States. Mr. Pitts is not entitled to post-conviction relief for three independent reasons, any one of which is sufficient to affirm the district court's order denying relief. First, as a threshold matter, his claim fails because he hasn't shown that his ACCA sentence in any way turned on the use of the residual clause when it was imposed in November 2009, as required by this court's decision in Beeman. Second, his Johnson claim is procedurally barred under the doctrine of procedural default, and he cannot show actual prejudice or actual innocence to excuse that default. And finally, on the merits, his 1982 California rape-by-force conviction qualifies categorically as a violent felony under the ACCA's elements clause as the Ninth Circuit held in its 1990 Potter decision. I'll turn first to the Beeman argument. As your honors have pointed out, there is no dispute that the record is silent as to which ACCA clause or clauses the district court used in classifying Pitts as an armed career criminal. Neither the PSI nor the party's filing suggested that his California rape or robbery convictions qualified solely under the residual clause, and therefore there's no hint on this record that the residual clause was essential to its ACCA classification. More importantly, perhaps, there was no law in November 2009 holding or otherwise making obvious that either of Pitts' California rape or robbery convictions qualified solely per the residual clause at that time. What about his reliance... Counsel, what about his reliance on the Lopez case? Your honor, at that point, that Ninth Circuit decision would not have provided that holding or otherwise obvious authoritative law in this circuit as to his California robbery convictions because, indeed, on direct appeal, this court specifically addressed those robbery convictions post-Curtis Johnson and held unequivocally that they qualified under the elements clause of the Armed Career Criminal Act. The court also made a ruling as to the residual clause, but clearly there wouldn't have been a reason to believe in November 2009 that the district court would have been constrained to rely solely on the residual clause when this very court on direct appeal held categorically under the elements clause that California robbery qualifies. Counsel, counsel... Sorry, this is Robert Love. On the enforceable rape conviction, if I were to agree with counsel, I'm not saying I do, but if I were to agree with counsel that I read Griffin to read out any force requirement or at least any force that would trigger the elements clause after Curtis Johnson... ..and I'm left with that in 2004, then isn't it obvious to the district court judge under Beeman that only the residual clause was left to apply? No, Your Honor, because you would have had the Ninth Circuit clear-holding under the elements clause that there's no doubt California rape by force would have qualified. That would have been the prevailing law that the district court would have looked to. Indeed, that's what the R&R in this court looked to in this proceeding. But as far as Griffin is concerned... Even if the state court comes with an intervening decision that completely changes how a statute is otherwise or thought to be interpreted? Yes, because the Ninth Circuit would have at that point concluded under the federal violent felony definition that California rape by force qualified, and the Griffin decision, which is really a case about whether to instruct a jury as to a specialized meaning of the term force, wouldn't have silently abrogated Potter or in any way undercut it. I mean, our position remains that Griffin doesn't alter the violent felony status of California rape by force. But even if you assume that Griffin had that effect, the Ninth Circuit's Potter decision really essentially would have governed the district court in its violent felony analysis. Counsel, I think what you're saying is if I were a district court judge in San Francisco ruling on whether this same statute from 1982 was a violent felony or not, and I had Griffin, I would still be required to follow Potter, even though Griffin was out there, until the Ninth Circuit said otherwise. Is that a fair representation? Yes. Yes, and so to return to the Beamon point, there was no law in November 2009 holding or otherwise making obvious that either of Pitts' California rape or robbery convictions qualified solely per the residual clause. And for those reasons, we think Beamon is fatal to his claim under Johnson. And if I could respond briefly to Chief Judge Karn's question about sort of the hypothetical situation, there would have been no basis to authorize a second or successive application because the claim he wanted to raise in the second or successive application would have been a Johnson claim, and a Johnson claim is a claim that your sentence is tainted or infected by constitutional residual clause error. If there is no residual clause error, if the district court hypothetically made clear that it relied on the elements clause, then there never would have been a basis to authorize a second or successive because those applications are limited to questions of constitutional law, and there would have been no constitutional error to speak of. If there are no other questions related to Beamon, I'll turn to the merits of California rape. We believe and still maintain that it qualifies categorically under the elements clause of the Armed Career Criminal Act. Mr. Pitts's contention is principally that because the force required to commit an act of nonconsensual sexual penetration doesn't have to be, quote, substantially greater or substantially different than the force inherent in an act of consensual sex, it by definition cannot meet the physical force requirement in the ACCA. We disagree. Here we have a forcible rape statute where the government has to prove that the force is committed with sufficient force to overcome the victim's will, and in our view, the sexual penetration plus that overcoming victim will requirement plainly makes this crime a violent felony under the elements clause. So either way, Mr. Pitts is not entitled to 2255 relief, both for procedural reasons and on the merits, and we ask respectfully that this court affirm the district court's order denying the defendant's motion to vacate. If there are no further... Counsel, this is Robert Lutz. Does Stokely help or hurt an argument on the merits? I think it helps because although it doesn't definitively control in the context of rape, it teaches us that the inquiry is not about sort of foot-pounds of force. It's not about sort of how substantial or how extreme or how furious the force is. The question is, is there force sufficient to overcome and in this case overcome the victim's will, which in our view is materially indistinguishable from the overcoming victim resistance context that you see in robbery. Didn't the Supreme Court specifically use the victim will, overpowering or overcoming victim will in Stokely? And I'll quote just a portion of the opinion at 553. This is true, meaning that it's inherently violent, because robbery that must overpower a victim's will, even a feeble or weak-willed victim, necessarily involves a physical confrontation and struggle. Does that analysis not hold relevance to the merits here? Yes, it certainly does, and that is the very quote that the government cited in its 28-J letter on Stokely. And I think that reference to overcoming a victim's will is extremely helpful for the government in this case. So we rely on Stokely as well, on the merits with respect to the forcible rape conviction. What about the adoption of Justice Scalia's concurring opinion in Castleman? Is that essentially adopted in Stokely, and how does that help or hurt your argument on the merits here? Again, I think it strengthens the government's argument because it makes clear that the holding in Curtis Johnson was really about an unwanted minimal touching. And the references in Stokely to hitting and slapping and pinching make very clear that the bar is not high. In Stokely, you have a violent felony in the case of a robbery where there's only very slight victim resistance, and the court made clear, for example, that in the common law, you could have a robbery when all you had was a perpetrator pulling out a diamond pin out of somebody's hair, if doing that caused the ripping of certain hairs. If that is a violent felony, then I see no basis in law to conclude that forcible rape against a victim's will is not a violent felony. Thank you. Any other questions? No, sir. Thank you. Thank you, Your Honors. We ask that you affirm the district court's order denying the defendant's second or successive 2255 motion. Mr. Day, five minutes. Thank you, Your Honor. It's very clear from People v. Griffin that the only force that's required is to demonstrate that the act was against the individual's will. That is all that was required. That is very different from Curtis Johnson. That is also very different from Stoeckling. And because of that, this particular crime does not include Johnson's force. I do want to speak to the fact that the government and Judge Luck asked a question about Stoeckling. In Stoeckling, the issue was overcoming resistance. Yes, they did speak about will, but it was in the context of overcoming resistance. That is not what we have in 261. As a matter of fact, in 1980, the California legislature eliminated resistance. So Stoeckling is of no help to the government in that regard. I also wanted to speak to the fact, and in that regard, when the government mentions the idea of slapping, that is not required here. 261 requires no physical struggle. The government argued that in their 28J. That is wrong. That is inconsistent with Griffin. Counsel, can I ask you the same question I asked your opposing counsel, which is if I was a district court in San Francisco in November of 2009, or exactly the time of the sentence here, and this exact issue came before me and it was argued that the elements clause applies, what would my ruling have to be? It would have to be that it did not. That it did not qualify under the... You are saying I did not have to follow Potter because of a state Supreme Court decision? And I wanted to speak to Potter. I do not believe that the clear holding of Potter is that it qualifies. It's an elements clause analysis. I don't believe that that was the clear holding in Potter. In Potter, they analyzed 261. They mentioned both the elements clause and the residual clause. They did state, they did make a reference thereafter to the elements clause, but then the analysis that Potter involved itself in was whether Potter's conviction was under what subsection. Was it under 1, 2, 3, or 4? There was no reference in the PSI under what subsection, and Potter did not object. So the holding, as I see it in Potter, was a plain error holding that Potter would be denied relief. So I don't believe that Potter is a clear holding that the elements clause or that 261 qualifies under the elements clause. That said, what the district court would have had would have been the people versus Griffin. Again, clear statement that resistance had been eliminated. The only force was the force that would indicate whether the act was against the individual's will. The only thing that would be required under 261 is that there be sexual penetration, a victim indicate their will, say no, or please stop, and penetration continue. That's a violation of 261. That's California rape. That cannot qualify under the elements clause. So I believe it would have clearly, the district court answering your question, Judge, the district court would have concluded that this crime only would have qualified under the residual clause. And as the court knows, many, many cases were being upheld or were being declared crimes of violence under the residual clause. We know this. Burglary, attempted burglary, conspiracy to commit robbery, felony DUI, carrying concealed weapons, fleeing and eluding, all of these were being held under the residual clause. And I believe that that was the default of many district judges. I know it was of at least one in the Southern District of Florida, Judge Seitz, who has said in a published opinion that that was her default. If it looked like there was a question as to whether a crime qualified under the elements clause, even a question, she would default to the residual clause because it was a catchall. And certainly that would make sense. So in answer to your question, yes, if I was a district court judge in November of 2009, wherever I was, in California I would have ruled that 261 did not qualify under the elements clause but would have qualified under the residual clause. And that's why I think we meet Beaman. But if this court thinks otherwise, then perhaps a limited remand pursuant to Pickett would be appropriate. Ask Judge Kahn. He's on the bench. Ask Judge Kahn, what was in your mind? What was the historical fact analysis at that time? I don't see how anyone would be hurt by that remand to satisfy that critical issue of the historical fact analysis. And that was what was— Counsel, two things. Number one, it's good to debate these issues, but the chances of remembering a particular case and what was in his mind unuttered and unwritten a decade ago is a different matter. He would probably do like us and try to apply the objective reasonable jurist approach and figure out what he did, knowing himself to be an objectively reasonable jurist. But I've never— Well, I don't want to stray on that. But let me tell you something else about— Judge Sainz was not the judge in this case. So we don't know that any other judge in the circuit, much less the judge in this case, followed the same default rule that she did. It seems to me like an equally reasonable rule is if you had a doubt as to whether the elements clause applied, why not hope, yes, the element clause applies? I believe it does. But if it doesn't, the residual clause applies. That seems to me like if we're trying to speculate what everybody's default rule was without any evidence other than the one thing that you say Judge Sainz has said, why not assume that everybody would hit as many reasonable alternatives as possible and let the court of appeals sort it out? Because that would be speculation, Your Honor, and it would be historical fact analysis conducted by this court rather than the judge who's in the best position to answer the question, what was the historical fact? No, no, wait. Whoa, whoa, whoa, stop. You've changed my question, and that's kind of outside the rule. Apologize. My question is, if putting aside your request that we let the judge do an evidentiary hearing into his own head and looking at what judges are likely to do and why they're likely to have gone to the residual clause, my question is, why isn't it, if that's not speculative, Steve, why is it speculative to say, well, the judge could just as likely have said, I would do it under both clauses? Because, Your Honor, it may just be as likely that, in fact, he knows exactly what he did and that that was his default. No, you're arguing again, counsel, for an evidentiary hearing. You're not, as far as I'm concerned, going to get one because that's not how we do this. That's not how we do plain error. Under your position, any time there's a plain error analysis, what we should do is remand to the district judge and say, you tell us if there's a reasonable probability of a different result, prong three, of the plain error analysis, because you know what was in your head a decade ago, and once you tell us that, we'll know whether it was plain error or not. We've never done that. We've rejected that approach in a number of cases after apprending. But I'm trying to get you to focus on if the Supreme Court comes out tomorrow and says, there shall be no remand evidentiary hearings to determine what the judge had in his mind years before, that's off the table, and we have to speculate as to what the default position of the judge was. Why wouldn't it be just as reasonable to infer or to assume or to conclude that judges would have done it on any reasonable basis they thought existed and then let the Court of Appeals tell them that they're wrong? I understand, Your Honor, and I would go back to the Beeman analysis. I think that the legal landscape at the time would have persuaded, would have indicated to the judge or to this court that, in fact, the elements clause would not have been available at the time of sentencing, but, in fact, the residual clause would have. That's what I agree with you is the issue as opposed to judges probably just went with the residual clause because it was broader or something like that. I understand, Your Honor. Thank you. That is the remainder of your time, and that is all the argument on the third case. We're going to take those cases, those three cases, all three today, under submission, and we'll recess until tomorrow morning. Thank you, counsel, for coping with us on this new circumstance. Well, thank you, Your Honor, for allowing a phone conference. I really appreciate it. We're adjourned.